IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISSAM ABDELLATIF, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>ALZA WRAE INDUSTRIAL COMPANY<br>d/b/a MAZA YA TOBACCO, et al.,<br><br>               Defendants. | CIVIL ACTION<br>NO. 18-2297 |

## OPINION

**Slomsky, J.**                                                   **March 20, 2019**

## I. INTRODUCTION

Plaintiffs Issam Abdellatif and C Breeze Group, Inc. ("Plaintiffs") bring this suit against

Defendants Alzawrae Industrial Company d/b/a Mazaya Tobacco,[1] Mazaya USA, LLC,[2] Wissam

Amoudi, and Romi Amoudi ("Defendants"), alleging four claims under Pennsylvania law: (1)

breach of the covenant of good faith and fair dealing; (2) breach of contract; (3) tortious

interference with the performance of a prospective contract; and (4) defamation.[3] (Doc. No. 1.)

On August 3, 2018, Defendants filed the present Motion to Dismiss. (Doc. No. 9.) On

August 17, 2018, Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss (Doc.

---

[1] The spelling of Alzawrae differs on the docket and in the pleadings. On the docket, the word is spelled "Alza Wrae." In the Complaint (Doc. No. 1) and the Motion to Dismiss (Doc. No. 9), the word is spelled "Alzawrae." The Court will use the latter spelling.

[2] The spelling of Mazaya differs on the docket and in the pleadings. On the docket, the name is spelled "Maza Ya." In the Complaint (Doc. No. 1) and the Motion to Dismiss (Doc. No. 9), the term is spelled "Mazaya." The Court will use the latter spelling.

[3] Jurisdiction in this case is based on diversity of citizenship. See 28 U.S.C. § 1332. A federal district court in a case arising under diversity of citizenship jurisdiction applies state law on substantive legal issues. Schmigel v. Uchal, 800 F.3d 113, 119 (3d Cir. 2015).

1

No. 11), and on August 24, 2018, Defendants filed a Reply in Support of their Motion (Doc. No. 13).  Finally, on October 23, 2018, the Court held a hearing on the Motion.

The Motion to Dismiss is now ripe for disposition.  For reasons discussed <u>infra</u>, the Motion to Dismiss will be granted in part and denied in part.

## II.    BACKGROUND[4]

Plaintiff Issam Abdellatif ("Abdellatif") is the owner and president of C Breeze Group, Inc. ("C Breeze Group"), a company located in Yardley, Pennsylvania, that sells and distributes tobacco products.  (Doc. No. 1 ¶¶ 1-2.)  Plaintiffs allege that in November 2015, C Breeze Group entered into an agreement with Defendant Alzawrae Industrial Company d/b/a Mazaya Tobacco ("Alzawrae"), a Jordanian tobacco manufacturer and distributer, to sell a brand of tobacco known as Mazaya to customers in the United States.  (<u>Id.</u> ¶¶ 5-6.)  It is unclear whether the agreement was oral or in writing.

Plaintiffs allege that a term in the agreement required C Breeze Group to "forgo selling any competing brands of tobacco and sell Mazaya Tobacco exclusively as the 'Mazaya Agent' in the United States."  (<u>Id.</u> ¶ 8.)  As the exclusive seller of Mazaya Tobacco in the United States, C Breeze Group created a website, mazayausa.com, to sell and market Alzawrae's product.  (<u>Id.</u> ¶ 7.)  Soon after negotiating the agreement, C Breeze Group paid Alzawrae over $260,000 for 5,000 cases of Mazaya Tobacco.  (<u>Id.</u> ¶¶ 11-12.)  When the shipment of the Mazaya Tobacco arrived, Plaintiffs discovered that the tobacco was of "poor quality and not satisfactory."  (<u>Id.</u> ¶ 11.)  Plaintiffs requested a refund, but Alzawrae did not acquiesce.

Meanwhile, without Plaintiffs' knowledge, Alzawrae created Mazaya USA, LLC ("Mazaya USA") in Florida, and designated it "as the new agent and distributor of Defendant Alzawrae . . .

---

[4]    The facts are sourced from the allegations in the Complaint and are set forth in the light most favorable to Plaintiffs.

in the United States . . . ." (Id. ¶ 15.)  According to Plaintiffs, Mazaya USA sold Mazaya Tobacco at a cheaper rate than C Breeze Group, thus undercutting C Breeze Group's profit.  (Id. ¶ 16.) Plaintiffs allege that Mazaya USA was owned by Defendant Wissam Amoudi, but make no other mention of him in the Complaint.  (Id. ¶ 5.)

On January 31, 2018, Plaintiffs traveled to Las Vegas, Nevada, to attend a tobacco trade show, the purpose of which was "for distributors of tobacco like Plaintiff[s] to establish business relationship[s] and arrange transactions for the sale of their product."  (Id. ¶¶ 17-18.)  Also at the trade show was Defendant Romi Amoudi, an employee of Mazaya USA.  (Id. ¶ 19.)  Plaintiffs claim that while at the trade show, Romi Amoudi "falsely stated to potential customers of Plaintiffs that Plaintiffs were the subject of a federal investigation."  (Id.)  Plaintiffs allege that these "false assertions by Defendant Romi Amoudi caused potential customers of Plaintiffs to forgo purchasing Plaintiff's tobacco products."  (Id. ¶ 20.)

On June 1, 2018, Plaintiffs filed the Complaint against Defendants, alleging the four violations of Pennsylvania law noted above: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract; (3) tortious interference with the performance of a prospective contract; and (4) defamation.  (Id. ¶¶ 21-24.)  On August 3, 2018, Defendants filed the instant Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6).  That is, Defendants claim that the Complaint should be dismissed because (1) the Court lacks personal jurisdiction over the parties; (2) the action was filed in an improper venue; (3) there was insufficient service of process; and (4) the Complaint fails to state a claim upon which relief can be granted.  (Doc. No. 9.)

In support of its Motion, Defendants attached two exhibits that respond to the allegation in the Complaint that Romi Amoudi falsely told customers that C Breeze Group was under federal

investigation. Exhibit B is a copy of a September 7, 2016 Mazaya USA online press release from Plaintiffs' website, mazayausa.com, announcing that C Breeze Tobacco was moving to Bensalem, Pennsylvania, and that it was opening a vape store called King of Puff. (Id. at 27-29.) Exhibit A is a copy of a December 6, 2016 online article from 6ABC News, reporting that local, state, and federal agencies were investigating King of Puff tobacco shop in Bensalem, Pennsylvania, for fraud. (Id. at 24-25.)

On October 23, 2018, the Court held a hearing on the Motion to Dismiss. After the hearing, the Court issued an Order, instructing the parties to conduct jurisdictional discovery on the personal jurisdiction, venue, and service issues raised by Defendants in the Motion to Dismiss. (Doc. No. 15.) After some delay, jurisdictional discovery was scheduled to close on March 19, 2019. (Doc. No. 18.) However, on March 12, 2019, Defendants informed the Court of the following:

> This letter is to inform the Court that Defendants do not wish to delay this matter further. In the interest of promptly moving this case forward, Defendants hereby withdraw without prejudice their arguments relating to service, venue and personal jurisdiction that are set forth in Sections IIB-D of their Brief in Support of their Motion to Dismiss, and seek an Order from the Court on the remainder of the Motion.
>
> Defendants are agreeing to withdraw without prejudice the arguments relating to service, venue and personal jurisdiction for the sole purpose of immediately obtaining a decision by the Court on the remainder of their Motion. Defendants are not conceding that jurisdiction, venue or service on defendant Alzawrae Industrial Company ("Alzawrae") are proper. Defendants do not agree to waive any additional arguments set forth in their Motion, and specifically continue to assert that defendant Mazaya USA, LLC is not an agent of defendant Alzawrae.

(Doc. No. 19 at 1-2.) According to the letter, Defendants notified Plaintiffs of their decision, and Plaintiffs had no objection. (Id.)

## III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.  ANALYSIS

In the present action, Defendants advance five arguments in support of their Motion to Dismiss for Failure to State a Claim.  First, Defendants submit that the Court should dismiss all claims against Defendant Wissam Amoudi because Plaintiffs have made no allegations against him. (Doc. No. 9 at 13.) Second, Defendants assert that Plaintiffs' claim for breach of the covenant of good faith and fair dealing should be dismissed because it is not recognized under Pennsylvania law.  (Id. at 14.)  Third, Defendants argue that the claim for breach of contract is insufficiently pled.  (Id.)  Fourth, Defendants submit that the Complaint lacks sufficient facts to support a claim of tortious interference with the performance of a prospective contract.  (Id. at 16.)  Fifth, Defendants argue that the defamation claim fails because (1) the statement made about C Breeze Group was true, and (2) Plaintiffs have pled insufficient facts. (Id. at 18.) Additionally, Defendants ask the Court to preclude Plaintiffs from seeking attorneys' fees and punitive damages in this action.  (Id. at 20.)  The Court will address Defendants' five arguments seriatim and then evaluate Defendants' request regarding attorneys' fees and punitive damages.

### A.  All Claims Against Defendant Wissam Amoudi will be Dismissed

Defendants first submit that all claims against Defendant Wissam Amoudi should be dismissed because the Complaint contains no allegations against him.  (Doc. No. 9 at 13.) Although they filed a Response in Opposition to Defendants' Motion to Dismiss, Plaintiffs have not responded to this particular argument.  (See Doc. No. 11.)

In Paragraph 5 of the Complaint, Plaintiff alleges that "Defendant Wissam Amoudi . . . is the principle owner of Defendant Mazaya USA, LLC." (Doc. No. 1 ¶ 5.) However, his name is not mentioned again in the Complaint. In Count I, Plaintiffs allege that Alzawrae and Mazaya USA breached the covenant of good faith and fair dealing. (Id. ¶ 21.) There is no allegation of Wissam Amoudi's involvement. In Count II, Plaintiffs claim that all "Defendants have breached the Agreement with Plaintiffs as set forth above." (Id. ¶ 22.) But the Complaint contains no allegations that Wissam Amoudi was a party to the alleged agreement. In Count III, Plaintiffs contend that Mazaya USA and Romi Amoudi tortiously interfered with prospective contracts with potential customers. (Id. ¶ 23.) Again, Wissam Amoudi is not mentioned. Finally, in Count IV, Plaintiffs claim that Mazaya USA and Romi Amoudi defamed Plaintiffs by knowingly making false statements concerning C Breeze Group at the trade show in Las Vegas. (Id. ¶ 24.) Plaintiffs do not bring this claim against Wissam Amoudi. As a result, all claims against Defendant Wissam Amoudi will be dismissed because the facts alleged in the Complaint are insufficient to support his involvement in any alleged cause of action.

### B. The Court will Dismiss Plaintiffs' Claim for Breach of Covenant of Good Faith and Fair Dealing

Next, Defendants submit that Plaintiffs have not stated a claim in Count I because Pennsylvania law does not recognize an independent cause of action for breach of the covenant of good faith and fair dealing. (Doc. No. 9 at 14.) Conversely, Plaintiffs contend that this claim should survive dismissal because it fits within the "business relationship exception," which permits a plaintiff to proceed on a distinct claim of breach of the covenant of good faith and fair dealing. (Doc. No. 11 at 8.) The Court disagrees with Plaintiffs' contention.

Pennsylvania has adopted Section 205 of the Restatement (Second) of Contracts. Somers v. Somers, 613 A.2d 1211, 1213 (Pa. 1992). Section 205 provides that "[e]very contract imposes

upon each party a duty of good faith and fair dealing in its performance and its enforcement."

Restatement (Second) of Contracts § 205. However, the duty of good faith and fair dealing "does

not create independent substantive rights." Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir.

2013) (citing Commonwealth v. BASF Corp., No. 3127, 2001 WL 1807788, at *12 (Pa. Comm.

Pl. Mar 15, 2001)). The duty does not give rise to a cause of action separate and distinct from a

breach of contract cause of action. Accordingly, in Pennsylvania, a claim predicated on a breach

of the covenant of good faith and fair dealing is "subsumed in a breach of contract claim." Burton,

707 F.3d at 432 (quoting LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 392 (Pa.

Super. Ct. 2008)).

Notwithstanding this well-established law, Plaintiffs claim that "[i]n limited circumstances,

Pennsylvania law does indeed allow a separate cause of action for breach of the implied covenant

of good faith and fair dealing." (Doc. No. 11 at 8.) They argue that this claim should survive

because "the agreement between the parties in this case required Plaintiffs to surrender substantial

control over their affair to Defendant Alzawrae Industrial Company d/b/a Mazaya Tobacco, when

it required Plaintiffs to forgo selling or distributing any other brand of tobacco other than its own."

(Id.)

To be sure, in limited circumstances, Pennsylvania courts have recognized independent

claims for breach of the covenant of good faith and fair dealing. Northview Motors, Inc. v.

Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000). But Plaintiffs' claim does not fit within

this exception because the allegations advanced in support of the good faith and fair dealing claim

are the same as those advanced in support of the breach of contract claim. In both claims, Plaintiffs

claim that (1) Alzawrae sent C Breeze Group poor quality tobacco, and (2) established Mazaya

USA in violation of the exclusivity term in the agreement. (See Doc. No. 1 ¶¶ 21-22.)

In <u>Northwest Motors</u>, an automobile dealer brought multiple claims against the defendant, who was an automobile manufacturer, including a claim that the manufacturer had breached the duty of good faith and fair dealing implicit in the parties' contract. 227 F.3d at 92. There, the Third Circuit Court of Appeals, applying Pennsylvania law, rejected the claim because it was predicated on the same set of facts as a claim for breach of contract raised in the complaint. <u>Id.</u>

Similarly, in <u>Tuno v. NWC Warranty Corp.</u>, the Third Circuit affirmed the district court's decision to dismiss an independent claim for breach of the covenant of good faith and fair dealing where the allegations pled to support that claim were identical to those pled to support a breach of contract claim. 552 Fed. App'x 140, 144 (3d Cir. 2014). The court held that the good faith and fair dealing claim could not survive as a stand-alone cause of action because it was grounded on allegations that were redundant with allegations underlying the breach of contract claim. <u>Id.</u> In so concluding, the court cited to <u>Parkway Garage, Inc. v. City of Philadelphia</u>, wherein the Third Circuit noted that where a plaintiff "could seek relief under an established cause of action, . . . there is not reason to imply a separate tort for breach of a duty of good faith." <u>Id.</u> (quoting 5 F.3d 685, 702 (3d Cir. 1993)).

Here, the allegations pled in support of the good faith and fair dealing claim are identical to those pled in support of the breach of contract claim. Indeed, Count II of the Complaint, the breach of contract claim, incorporates facts alleged in Count I of the Complaint, the breach of covenant of good faith and fair dealing claim, by noting: "Defendants have breached the Agreement with Plaintiffs as set forth above." (Doc. No. 1 ¶ 22.) As a result, the Court will not permit this claim to proceed independent of the breach of contract claim and it will be dismissed.

### C. Plaintiffs have Stated a Plausible Breach of Contract Claim Against Alzawrae

Second, Defendants argue that Plaintiffs have not stated a claim for breach of contract under Pennsylvania law. First, they contend that the allegations in the Complaint are insufficient to survive a motion to dismiss. Second, they submit that, at a minimum, the breach of contract claim should be dismissed against Defendants Wissam Amoudi, Romi Amoudi, and Mazaya USA because only Alzawrae was a party to the agreement. (Doc. No. 9 at 14.) The Court is not persuaded by Defendants' first argument, but will dismiss the breach of contract claim against all Defendants except Alzawrae.

Under Pennsylvania law, "a cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Although a plaintiff need not state every term of the contract in complete detail or attach the contract to the complaint, every element must be specifically pled. Id. (citing Snaith v. Snaith, 422 A.2d 1379, 1382 (Pa. Super. Ct. 1980)); see also Transp. Int'l Pool, Inc. v. Ross Stores, Inc., No. 06-1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009).

Here, although Plaintiffs have provided only scant details about the agreement between C Breeze Group and Alzawrae, they nevertheless plead the existence of a contract. Plaintiffs expressly identify the parties to the contract and what appears to be the terms of the contract: (1) that Plaintiffs would purchase bulk amounts of Mazaya Tobacco from Alzawrae and sell it to consumers in the United States; (2) that Plaintiffs would forgo selling competing brands of tobacco; and (3) that Plaintiffs would become the exclusive seller of Alzawrae's Mazaya Tobacco in the United States. (Doc. No. 1 ¶¶ 5-10.) Further, the allegations in the Complaint demonstrate that the parties acted in a manner that would give rise to the inference of the existence of a contract.

For example, after negotiating the agreement with Alzawrae, Plaintiffs created the website mazayausa.com to sell and market Alzawrae's product.  (Id. ¶ 7.)  Further, at one point after the agreement was made, Plaintiffs paid Alzawrae around $260,000, and in return, Alzawrae sent Plaintiffs 5,000 cases of Mazaya Tobacco.  (Id. ¶ 12.)

Next, Plaintiffs have sufficiently pled a plausible breach the agreement between C Breeze Group and Alzawrae.  First, Plaintiffs claim that Alzawrae breached the terms of the agreement because the 5,000 cases of tobacco sent by Alzawrae were of "poor quality and not satisfactory." (Id. ¶ 11.)  Essentially, they allege that the product they received was not the product they agreed to buy.  Second, Plaintiffs claim that Alzawrae breached the exclusivity term of the agreement by creating Mazaya USA, LLC to sell Alzawrae Mazaya Tobacco in the Untied States.  Taking the allegations in the Complaint as true, Plaintiffs have sufficiently pled a breach of the agreement on both issues.

Finally, Plaintiffs have adequately pled the existence of damages.  Although Plaintiffs have not specified an exact number, it is plausible that they suffered a loss of $260,000 if they were unable to sell the poor-quality shipment of Mazaya Tobacco.  Further, Plaintiffs would have suffered a loss when Alzawrae created a second company to distribute its product in the United States.  Consequently, Plaintiffs have sufficiently pled a breach of contract claim against Alzawrae under Pennsylvania law.

What Plaintiffs have not done is pled a breach of contract claim against Defendants Mazaya USA, Wissam Amoudi, or Romi Amoudi.  In Count I, Plaintiffs state that "Defendants have breached the Agreement with Plaintiffs as set forth above."  But Mazaya USA, Wissam Amoudi, and Romi Amoudi were not parties to the agreement and as a result cannot be held liable for any alleged breaches of the contract committed by Alzawrae.  Accordingly, the Court will permit

Plaintiffs to proceed on this claim against Alzawrae only, but will dismiss the claim against Mazaya USA, Wissam Amoudi, and Romi Amoudi.

### D. Plaintiffs have Failed to Allege Facts Sufficient to State a Claim for Tortious Interference of the Performance of a Prospective Contract under Pennsylvania Law

Next, Defendants submit that Plaintiffs have failed to state a claim for tortious interference with the performance of a prospective contract under Pennsylvania law. In the Complaint, Plaintiffs allege that "Defendant Romi Amoudi, who is an employee of Defendant Mazaya USA, LLC falsely stated to potential customers of Plaintiffs that Plaintiffs were the subject of federal investigation." (Doc. No. 1 ¶ 20.) They further allege that "[t]he false assertions by Defendant Romi Amoudi caused potential customers of Plaintiffs to forgo purchasing products." (Id. ¶ 21.) From these allegations, Plaintiffs claim that Romi Amoudi and Mazaya USA tortiously interfered with prospective contracts with potential customers. In the Motion to Dismiss, however, Defendants submit that the allegations in support of the tortious interference claim are too vague to survive dismissal. (Doc. No. 9 at 16.) The Court agrees with Defendants.

The elements of a claim for tortious interference are derived from the Restatement (Second) of Torts § 766, which has been adopted in Pennsylvania. Kernaghan v. BCI Communications, Inc., 802 F. Supp. 2d 590, 595 (E.D. Pa. 2011); see also Walnut Street Associates, Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 97 n.2 (Pa. Super. Ct. 2009). Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766.

"To prove a claim for tortious interference with prospective contracts, a plaintiff must prove all of the same elements, listed above, of a claim for tortious interference with an existing contract, although the first element requires proof of the existence of a prospective contractual relationship." BP Envtl. Servs., Inc. v. Republic Servs., Inc., 946 F. Supp. 2d 402, 412 (E.D. Pa. 2013).  Thus, to prevail on a claim of tortious interference with a prospective contract, a plaintiff must plausibly establish the following elements: "(1) a prospective contractual relation; (2) purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) absence of privilege or justification on the part of the defendant; [and] (4) occasioning of actual damage resulting from the defendant's conduct."  U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 925 (3d Cir. 1990).

A prospective contractual relationship is "something less than a contractual right, [but] something more than a mere hope." BP Envtl. Servs., 946 F. Supp. 2d at 412-13 (quoting Phillips v. Selig, 959 A.2d 420, 428-29 (Pa. Super. Ct. 2008)).  "In determining whether there is a prospective contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized absent the defendant's interference." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (citing Glenn v. Point Park Coll., 272 A.2d 895, 898-99 (1971)).  That is, courts ask how likely it is that the parties would have entered into a contract if the defendant had not interfered.

For example, in QVC, Inc. v. Resultly, LLC, the court found that QVC had failed to plead a tortious interference claim under Pennsylvania law because it had failed to identify a "specific prospective contract."  159 F. Supp. 3d 576, 599 (E.D. Pa. 2016).  Although QVC asserted that "it

had a reasonable expectation of prospective contractual relationships with the customers who visit QVC's website and purchase products, it [did] not identif[y] a single past, present or prospective customer with whom it had a prospective contract that was undermined by Resultly's actions." Id. (internal quotation marks omitted).   As a result, the court found that the claim could not survive. Id.

Similarly, in Winer v. Senior Living Guide, Inc., the court dismissed a tortious interference claim brought under Pennsylvania law because the plaintiff only alleged that the defendant interfered with sales from "potential customers."  No. 12-934, 2013 WL 1217582, at *10-11 (W.D. Pa. Jan. 17, 2013).  In dismissing the claim, the court explained that "vague references to 'potential customers' are insufficient to satisfy" the standard for tortious interference, and that the claim failed because "Plaintiff ha[d] not pointed to specific prospective contractual relationships with which Defendants interfered."  Id. at *11.

Here, Plaintiffs allege that Mazaya USA and Romi Amoudi tortiously interfered with C Breeze Group's prospective contracts with potential customers at the January 31, 2018 trade show in Las Vegas.  As noted above, Plaintiffs allege that "[t]he false assertions by Defendant Romi Amoudi caused potential customers of Plaintiffs to forgo purchasing Plaintiff's tobacco products." (Doc. No. 1 ¶ 21.)  Plaintiffs have not identified these customers.  Nor have they specified what type and the amount of tobacco products that these "potential customers" planned to buy.  It is unclear whether the potential customers were engaged in active negotiations with Plaintiffs to buy their products, or whether they had merely expressed some modicum of interest in C Breeze Group while window-shopping at the Las Vegas trade show.  As in QVC and Winer, the allegations pled here are insufficient.  Without more, Plaintiffs have failed to plead facts sufficient to establish the first element of a claim for tortious interference with a prospective contract under Pennsylvania

law—that is, they have not pled a prospective contract. For that reason, the Court will dismiss this claim.

### E. Plaintiffs have Failed to State a Claim for Defamation under Pennsylvania Law

Finally, Defendants argue that Plaintiffs have not stated a claim for defamation under Pennsylvania law. Specifically, they submit that Plaintiffs' defamation claim fails because (1) the Complaint lacks sufficient facts to state a claim, and (2) the alleged defamatory statement was true. (Doc. No. 9.) In opposition to the Motion to Dismiss, Plaintiffs contend that they have in fact pled a plausible claim for defamation. (Doc. No. 11.) They do not respond to the argument that the allegedly defamatory statement was in fact true.

To establish defamation under Pennsylvania law, a plaintiff has the burden of proving the following:

(1) The defamatory character of the communication.

(2) Its publication by the defendant

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

Joseph v. Scranton Times L.P., 129 A.3d 404 (Pa. 2015) (citing 42 Pa. C.S. § 8343(a)).

In a defamation action, a court must make a threshold determination of whether a challenged statement is capable of defamatory meaning. Gibney v. Fitzgibbon, 547 Fed. App'x 111, 113 (3d Cir. 2013). "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from

associating or dealing with him." <u>Thomas Merton Ctr. v. Rockwell Int'l Corp.</u>, 442 A.2d 213, 215 (Pa. 1981). "It is not enough that the victim of the 'slings and arrows of outrageous fortune', be embarrassed or annoyed, he must have suffered that kind of harm which has grievously fractured his standing in the community of respectable society." <u>Scott-Taylor, Inc. v. Stokes</u>, 229 A.2d 733, 734 (1967). Thus, for Plaintiffs to prevail, "the statement must do more than merely embarrass or annoy [them]; it must provoke 'the kind of harm which has grievously fractured [their] standing in the community of respectable society.'" <u>Graboff v. Colleran Firm</u>, 744 F.3d 128, 136 (3d Cir. 2014) (quoting <u>Tucker v. Phila. Daily News</u>, 848 A.2d 113, 124 (Pa. 2004)).

Here, Defendants argue that under Pennsylvania law, defamation is subject to a heightened standard of pleading, such that a plaintiff must specifically identify: (1) the alleged defamatory statement; (2) by whom the statement was made; (3) and to whom it was made. (Doc. No. 9.) The Court disagrees. A federal court sitting in diversity applies the Federal Rules of Civil Procedure, even when enforcing the federal rule "alters the mode of enforcing state-created rights." <u>Hanna v. Plumer</u>, 380 U.S. 460, 473 (1965). "Therefore, Federal Rule of Civil Procedure 8(a), and not Pennsylvania law, provides the standard of specificity applicable to plaintiff's defamation claim." <u>Tuman v. Genesis Associates</u>, 935 F. Supp. 1375, 1391 (E.D. Pa. 1996) (quoting <u>GE Capital Mortg. Serv., Inc. v. Pinnacle Mortg. Inv. Corp.</u>, 897 F. Supp 854, 867 (E.D. Pa. 1995)). "Under Rule 8(a), a defamation plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements. So long as the count provides sufficient notice to defendants, it states a claim." <u>Id.</u> (quoting <u>Lynch v. Borough of Ambler</u>, No. 94-6401, 1995 WL 113290, at *5-6 (E.D. Pa. Mar. 15, 2016)). Indeed, "[f]ederal courts in this district . . . have rejected the need to identify the precise defamatory statements, or the specific identify of the speaker(s), or the specific recipient(s) of the statements." <u>In re Sun Apparel Warehouse, Inc.</u>, No.

03-0002, 2003 WL 21262691, at *9 (Bankr. E.D. Pa. May 22, 2003); see also Joyce v. Alti America, Inc., No. 00-5420, 2001 WL 1251489, at *2 (E.D. Pa. Sept. 27, 2001).

In the Complaint, Plaintiffs specifically allege that Defendant Romi Amoudi falsely told potential customers at the Las Vegas trade show that Plaintiffs were under federal investigation. Although the Complaint does not specifically name the customers, the allegations are sufficient under Rule 8(a) because they adequately provide Defendants with notice as to the content of the statement, who made the statement, and to whom the statement was made. See Windowizards, Inc. v. Castle "The Window People", Inc., No. 00-4680, 2001 WL 586810, at *2 (E.D. Pa. May 30, 2001) (noting than even though the plaintiffs only alleged that the defamatory statements were made to "potential customers," the context of the statements was clear enough to put the Defendant on notice of what the plaintiff's claim is and the grounds upon which it rests).

Next, Defendants argue that the defamation claim fails because the alleged statement at issue was not false, or if the statement was false, that Romi Amoudi was reasonably justified in believing that it was true. (Doc. No. 9 at 16.) Truth is an affirmative defense to defamation under Pennsylvania law. Pa. C.S.A. § 8343(b)(1); see also Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014) ("A defendant may avoid liability for defamation if it shows that its statements were 'substantially true'"). "Under Pennsylvania law, proof of substantial truth must go to the 'gist' or 'sting' of the alleged defamatory matter; the test is whether the alleged libel as published would have a different effect on the mind of the reader from which the pleaded truth would have produced." Emekekwue v. Offor, 26 F. Supp. 3d 348, 362 (M.D. Pa. 2014) (quoting Keeshan v. The Home Depot, U.S.A., Inc., No. 00-0529, 2001 WL 310601, at *15 (E.D. Pa. Mar. 27, 2001)).

For example, in Mallory v. S & S Publishers, the district court found that a passage in the defendant's book which stated that the plaintiff "picked up men" was not defamatory under

Pennsylvania law.  260 F. Supp. 3d 453, 461 (E.D. Pa. 2017).  There, a direct quote from the plaintiff's own memoir stated that she frequently picked up men.  Thus, the defendant's statement was true and incapable of defamatory meaning.  Id.

Here, Plaintiffs allege that "Defendant Romi Amoudi, who is an employee of Defendant Mazaya USA, LLC falsely stated to potential customers of Plaintiffs that Plaintiffs were the subject of a federal investigation."  (Doc. No. 1 ¶ 19.)  In the Motion to Dismiss, Defendants argue that this statement is not defamatory because Defendants believed that Plaintiffs were under federal investigation when the statement was made.  (Doc. No. 9 at 19.)

In support of their argument, Defendants point to two Exhibits.  Exhibit B is a press release from mazayausa.com, the website Plaintiffs created to market and sell Mazaya Tobacco in the United States.  (Id. at 27; Doc. No. 1 ¶ 7.)  The press release, which is dated September 7, 2016, states that C Breeze Tobacco "will be moving to a new location . . . [at] 801 Bristol Pike Bensalem Pa."  (Doc. No. 9 at 27.)  Further, the press release states that C Breeze Tobacco planned to open a vape store, called King of Puff at that address.  (Id.)  Exhibit A is an 6ABC News online article from December 6, 2016, entitled: "Bensalem business raided in fraud investigation."  (Id. at 24.)  The body of the article reads as follows:

> Local, state and federal agencies converged on a Bucks County business Tuesday afternoon as part of an ongoing investigation.
>
> It happened around noon at King of Puff tobacco shop on the 800 block of Bristol Pike in Bensalem.
>
> Sources tell Action News the tobacco shop is currently under investigation for fraud; the exact details are not known at this time.
>
> Officials could be seen leaving with boxes of cigarettes.  The loaded them onto waiting trucks.
>
> Action News will update this story as more information becomes available.

(Id. at 24-25.)

From Exhibits A and B, it is evident that Romi Amoudi's statement, which he denies making in the first place, was substantially true. In the Complaint, Plaintiffs allege that Mazaya USA and Romi Amoudi defamed them when Mr. Amoudi falsely told potential customers that Plaintiffs were under federal investigation. But the Exhibits provided by Defendants establish that that the statement at issue was not false at all; indeed, the Exhibits show that the statement was true.

In the Response in Opposition to Defendants' Motion to Dismiss, Plaintiffs state that "[t]he articles attached to Defendants' moving brief should be rejected by this Court as lacking in foundation, misleading and false." As an initial matter, it is appropriate for the Court to consider Exhibits A and B at the motion to dismiss stage. As recently explained by the Third Circuit Court of Appeals, in addition to examining the complaint, exhibits attached to the complaint, and matters of public record, a court "can also consider documents that a defendant attaches as an exhibit to a motion to dismiss, if they are undisputedly authentic and the plaintiff's claims are based on them." Estate of Roman v. City of Newark, 914 F.3d 789, 796 (3d Cir. 2019) (internal citations and quotation marks omitted). Indeed, "the Supreme Court has been clear about the scope of [the court's] review, stating we 'must consider the complaint in its entirety, as well as other sources [we] ordinarily examine when ruling on . . . motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

The Court has no reason to doubt the authenticity of these attachments. Exhibit A is a press release that was issued on Plaintiffs' own website, mazayausa.com. Exhibit B is an online article from an existing news outlet, 6ABC News. Both attachments exist in the public domain and are

easily accessible.  Thus, even though Plaintiffs insist that the information in Exhibit A is false, Defendants had a reasonable basis for believing that Plaintiffs were in fact under federal investigation.  As a result, the statement at issue is not defamatory and Plaintiff's defamation claim against Mazaya USA and Romi Amoudi fails.

### F. Plaintiffs Cannot Recover Punitive Damages on the Breach of Contract Claim, but the Court will not Preclude Plaintiffs from Seeking Attorneys' Fees at This Stage in the Proceedings

Finally, Defendants take issue with the fact that Plaintiffs demand attorneys' fees under each of the four Counts in the Complaint.  They argue that "the Complaint never advances any cause of action on which an award of fees could be based."  (Doc. No. 9 at 20.)  Plaintiffs oppose this argument, and ask that the Court refrain from deciding this issue at the motion to dismiss stage.  (Doc. No. 11.)

"The general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct."  Luccino v. Commonwealth, 809 A.2d 264, 267 (Pa. 2002).  This so-called "American Rule" holds true "unless there is express statutory authorization, [or] a clear agreement of the parties or some other established exception."  Mosaica Academy Charter School v. Com. Dept. of Educ., 813 A.2d 813, 822 (Pa. 2002).  Absent an applicable contractual provision, Pennsylvania law does not allow awards of attorneys' fees in ordinary breach of contract actions.  Board of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Int'l Fidelity Ins. Co., 63 F. Supp. 3d 459, 475 (E.D. Pa.  2014).  However, an exception applies "when [a prevailing party's] opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]"  Id. (quoting F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129 (1974)).

To preclude Plaintiffs from ever requesting attorneys' fees in this matter would be premature. Without discovery, it is impossible to foresee whether Plaintiffs are incapable of producing evidence that Defendants acted in bad faith in this action. Consequently, the Court will refrain from ruling on this issue at this time.

Defendants also seek to prevent Plaintiffs from asking for punitive damages from the breach of contract claim—the only claim that will remain after the motion to dismiss stage. (Doc. No. 9.) Punitive damages are not recoverable under a common law breach of contract claim. Aaron v. State Farm Fire and Casualty Company, No. 17-2606, 2017 WL 3484087, at *2 (E.D. Pa. Aug. 14, 2017) (citing McShea v. City of Philadelphia, 995 A.2d 334, 340 n.5 (Pa. 2010) ("Punitive damages are awarded in tort actions, not for breach of contract.")). To that end, Plaintiffs contend that discovery will reveal that they are entitled to punitive damages. (Doc. No. 11.) But no amount of discovery on the part of Plaintiffs will change the law on this issue. Consequently, Plaintiffs are precluded from seeking punitive damages in this action.

V.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint for Failure to State a Claim (Doc. No. 9) will be denied in part and granted in part. Counts I, III, and IV will be dismissed. Count II, the breach of contract claim, survives against Defendant Alzawrae only. Accordingly, Defendants Wissam Amoudi, Romi Amoudi, and Mazaya USA, LLC will be dismissed as Defendants in this case. An appropriate Order follows.